UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TERRANCE L. COSGROVE, <br><br> Defendant. | CASE NO. CR15-230-RSM <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Terrance L. Cosgrove's Motion for Reconsideration, Dkt. #91, requesting reconsideration of this Court's March 24, 2020 order denying compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #90. The Court finds oral argument unnecessary to rule on this motion. Having considered the Motion, the Government's Response, Dkt. #94, all submissions filed in support thereof, and the remainder of the record, the Court GRANTS Mr. Cosgrove's Motion for Reconsideration of its previous order denying compassionate release.

## II.   BACKGROUND

A full summary of this case is not necessary given this Court's previous order on Mr. Cosgrove's original motion for compassionate release under 18 U.S.C. §3582(c)(1). *See* Dkt. #90.

ORDER GRANTING DEFENDANT'S
MOTION FOR RECONSIDERATION - 1

Mr. Cosgrove is a 70-year-old man who previously worked as a businessman and investor in the commercial fishing industry. The Government charged Mr. Cosgrove with mail fraud, 18 U.S.C. § 1341, and two counts of wire fraud, 18 U.S.C. § 1343, in relation to a criminal scheme that defrauded three groups of victims. These victims included his business partners, the widow and children of his best friend, and the wife and children of another friend. *Id.* at 1-2. The Government estimated that Mr. Cosgrove's scheme resulted in "millions of dollars" stolen from his victims. *Id.* at 2.

On December 7, 2016, Mr. Cosgrove pleaded guilty to all counts. The Court sentenced Mr. Cosgrove on May 9, 2017, imposing a 60-month period of confinement that was below the sentencing guideline range of 78 to 97 months. In imposing the 60-month sentence, the Court took into account "Mr. Cosgrove's age, health, family situation, and the 'abominable breach of trust' involved in his case." *Id.* at 2 (citing Dkt. #53 at 17). The presentence report informed the Court of Mr. Cosgrove's extensive medical history: a liver transplant in September 2015 after a diagnosis of end-stage liver disease; three separate heart attacks; hospitalization for bowel obstruction; diagnosis of squamous cell carcinoma on his face and scalp; and diagnosis of moderate degenerative disc disease. *Id.* (citing Dkt. #79 at 2).

On October 16, 2017, Mr. Cosgrove self-reported to the Federal Correctional Institution at Terminal Island with a projected release date of January 17, 2022. *Id.* Mr. Cosgrove filed a request with the Bureau of Prisons ("BOP") staff for a reduction in his sentence, which the BOP denied on December 4, 2019. On December 23, 2019, Mr. Cosgrove moved this Court to grant compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #71. After Mr. Cosgrove obtained counsel and filed supplemental authority in support of his motion, the Court denied his motion on March 24, 2020. Dkt. #90. However, the Court noted that it "would consider a renewed motion

from Mr. Cosgrove if additional guidance is issued by the Department of Justice or the BOP about treating COVID-19 as an extraordinary and compelling circumstance under the First Step Act." *Id.* at 5-6, n.3.

Since the Court's March 24, 2020 order, public understanding of the virus and its corresponding risks to inmates and staff at BOP facilities have evolved. The U.S. Centers for Disease Control and Prevention has continued to update its guidance on the coronavirus, advising that certain populations are at heightened risk of severe complications and/or death if they contract COVID-19. These populations include individuals over the age of 65 and those with chronic medical conditions, including serious heart conditions, liver disease, and immunocompromised patients. *See* U.S. Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019-COVID*, *People who are at higher risk for severe illness,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-athigher-risk.html (last reviewed April 14, 2020) ("CDC Guidelines").

In response to public health officials' warnings about the spread of COVID-19 and the risk of severe complications in certain populations, all levels of government have implemented widespread "social distancing" measures. *See, e.g.*, W.D. Wash. Gen. Order No. 07-20 (April 14, 2020) (continuing all in-person proceedings scheduled to occur before July 1, 2020). On March 26, 2020, the U.S. Attorney General issued guidance to the Director of the BOP for transferring certain at-risk inmates to home confinement, including those who are non-violent and pose minimal likelihood of recidivism. Dkt. #91-1 at 1. In this memorandum, the U.S. Attorney General listed age and vulnerability of the inmate based on the CDC Guidelines as discretionary factors for the BOP to consider. On March 28, 2020, the BOP reported the first COVID-19-related death of an inmate in custody: a 49-year-old inmate in Louisiana with long term medical conditions

ORDER GRANTING DEFENDANT'S
MOTION FOR RECONSIDERATION - 3

identified as risk factors.  Press Release, Bureau of Prisons, *Inmate Death at FCI Oakdale I* (Mar. 28, 2020), https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf.  As of April 14, 2020, there have been fourteen federal inmate deaths.  *See* Federal Bureau of Prisons, Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited April 14, 2020).

The conditions at Terminal Island FCI, where Mr. Cosgrove is confined, have also changed rapidly.  At the time of the Government's April 10, 2020 Response, no inmates or staff at Terminal Island had tested positive for COVID-19.  *See* Dkt. #94 at 8.  However, BOP's website now reports that eight individuals—six inmates and two staff members—have tested positive at the facility.  *See* Federal Bureau of Prisons, Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited April 14, 2020).

Mr. Cosgrove filed the instant motion for reconsideration on April 1, 2020—twelve days after the Court denied his original motion.  Dkt. #91.  The Government filed its Response on April 10, 2020, opposing Mr. Cosgrove's motion.  Dkt. #94.

### III.   DISCUSSION

**A. Legal Standards**

1. Motions for Reconsideration

Motions for reconsideration are generally disfavored.  *See* Local Rules W.D. Wash. LCR 12(b)(13)(A).  "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."  *Id.*

Here, the evolving COVID-19 crisis has presented new evidence not previously available to parties or the Court at the time of Mr. Cosgrove's original motion.  Indeed, in denying Mr. Cosgrove's request for relief, the Court acknowledged that BOP's representations regarding its

ability to provide medical care for Mr. Cosgrove were made prior to the COVID-19 outbreak. *See* Dkt. #90 at 5, n.3. The Court specifically noted that the question of whether BOP could adequately care for Mr. Cosgrove in light of the COVID-19 crisis "has not been substantially briefed by the parties and is not before the Court at this time . . . ." The Court finds that new information on the COVID-19 health crisis has become available in the weeks following its previous order.

### 2. Compassionate Release under the First Step Act

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended Section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13.

Furthermore, the application notes to the USSG offer guidance on medical conditions that may warrant compassionate release. Pursuant to Application Note 1 to USSG § 1B1.13, "extraordinary and compelling reasons" for a sentence reduction exist when:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples

ORDER GRANTING DEFENDANT'S
MOTION FOR RECONSIDERATION - 6

include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13 cmt. n.1.

**B. Analysis**

Here, Mr. Cosgrove is at least 70 years old but was not sentenced under 18 U.S.C. § 3559(c). For that reason, only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to his motion. Thus, under the policy statement, Mr. Cosgrove is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

In denying Mr. Cosgrove's motion for compassionate release, the Court found that he demonstrated extraordinary and compelling reasons for compassionate release and posed no danger to the community. Dkt. #90 at 9. However, in considering the factors set forth in 18 U.S.C. § 3553(a) as required under the policy statement, the Court denied Mr. Cosgrove's request for relief. Now, in light of new evidence regarding the evolving COVID-19 health crisis, the Court finds reconsideration of its March 24, 2020 order appropriate.

1. <u>Extraordinary and Compelling Reasons</u>

In its March 24, 2020 order, the Court found that Mr. Cosgrove established extraordinary and compelling reasons to reduce his sentence pursuant to USSG § 1B1.13(1)(A). Specifically, the Court found that Mr. Cosgrove's advanced age and poor health, including serious physical

ORDER GRANTING DEFENDANT'S
MOTION FOR RECONSIDERATION - 7

conditions, functional impairments, and deteriorating physical health, constituted extraordinary and compelling circumstances. Dkt. #90 at 6 (citing USSG §1B1.13 cmt. n.1). The Court finds no manifest error here.

### 2. Danger to Others or the Community

The Court also found that Mr. Cosgrove presents no danger to any person or to the community given his advanced age and poor health. Dkt. #90 at 6. The Government did not contest this point in its original briefing nor in its response to the instant motion. Dkt. #78 at 7-8; *see generally* Dkt. #94. The Court likewise finds no manifest error here.

### 3. Reduction Consistent with USSG Policy Statement

Having found that that Mr. Cosgrove's age and health constitute extraordinary and compelling reasons warranting compassionate release and that he poses no danger to others or to the community, the Court must now consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

In its March 24, 2020 order, the Court found that these factors weighed against granting Mr. Cosgrove's requested relief. Regarding the first factor, the Court observed that "the nature

and circumstances of Mr. Cosgrove's underlying offense are particularly reprehensible" given that he defrauded close friends who trusted him, including one victim who lost her home. Dkt. #90 at 8. The Court also found that the second factor, the need for sentence imposed, warranted denial in order for Mr. Cosgrove's sentence to reflect the seriousness of his conduct. *Id.* ("Instead of fulfilling the weighty duty with which he was personally entrusted, he abused his victims' trust to fund an extravagant lifestyle. His actions were serious, and they were motivated by greed."). The Court also observed that Mr. Cosgrove had served less than half of the lowest recommended sentence under the sentencing guidelines, which could not reasonably constitute "just punishment" given his victims' financial losses and their personal trauma. *Id.* Regarding the fourth factor, the sentencing guidelines, the Court acknowledged that Mr. Cosgrove's original 60-month term of confinement already reflected his age and poor health at the time of sentencing. *Id.* ("[T]he very same extraordinary and compelling circumstances raised by Mr. Cosgrove were taken into consideration at the time of his original sentencing."). Finally, the fifth factor weighed against compassionate release since restitution was still owed to the victims. *Id.* at 8-9.

Parts of the Court's earlier analysis regarding the Section 3553(a) factors remain unchanged by the COVID-19 crisis: Mr. Cosgrove's actions and underlying offense remain reprehensible, his original sentence was below the sentencing guideline range, and restitution is still owed to the victims as a result of his actions. On these points, the Court's original assessment holds true: "Mr. Cosgrove's actions were not a result of bad business decisions; they were a result of his greed. And these actions have had lasting consequences for his victims, ranging from housing security to their ability to retire." Dkt. #90 at 9. The Court acknowledges that Mr. Cosgrove's request for compassionate release, with half his sentence still remaining, presents

ORDER GRANTING DEFENDANT'S
MOTION FOR RECONSIDERATION - 9

serious concerns given the financial losses and personal trauma suffered by Mr. Cosgrove's victims.

However, the Court finds that the "extraordinary and compelling circumstances" taken into account at the time of Mr. Cosgrove's sentencing are no longer the same circumstances now before the Court. The "extraordinary and compelling" circumstances considered at Mr. Cosgrove's sentencing—specifically, his age, deteriorating health, and chronic heart and liver conditions—were not considered in the context of the COVID-19 pandemic, where such conditions put him at more significant risk for severe and life-threatening illness. The Government argues that the same issues presented in the emergency motion were previously briefed by the parties and addressed by the Court, including a supplemental brief addressing the potential impact of COVID-19 on Mr. Cosgrove's health and medical issues. Dkt. #94 at 6-7. The Court disagrees. The Court explicitly acknowledged in its March 24, 2020 order that the evolving COVID-19 health situation "has *not* been substantially briefed by the parties" and accordingly did not consider the issue in reaching its decision. Dkt. #90 at 5, n.3 (emphasis added).

In its Response, the Government outlines the extraordinary measures taken by the BOP and the Department of Justice to address the COVID-19 outbreak. Dkt. #94 at 9-10. These preventive and mitigation measures include screening of staff and incoming inmates, limited contractor visits, suspension of nearly all attorney, social, and volunteer visits, limited inmate movements between facilities, and staggered times for meals and recreation. *Id.* at 10. The Court does not discount the tremendous efforts taken by the BOP and staff at Terminal Island during this extraordinary time. However, even with these efforts in place, the BOP has reported eight infections at the facility as of April 14, 2020.

The Court finds that the spread of the virus at Terminal Island, combined with Mr. Cosgrove's age and specific underlying conditions, together present far more than an "elevated risk" or "mere possibility" of serious illness. *Cf. Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020). Rather, they put Mr. Cosgrove at significant risk for even more severe and life-threatening illness if he is exposed to COVID-19 during his confinement. Accordingly, the Court finds that this confluence of factors amounts to "extraordinary and compelling" reasons warranting release under the USSG. *See United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *4 (D. Conn. Apr. 1, 2020) ("[T]he Court may determine that 'extraordinary and compelling' reasons may exist beyond those delineated by the commentary to U.S.S.G. § 1B1.13.").

For these reasons, having considered the factors under Section 3553(a), the Court finds that the extraordinary and compelling circumstances now before the Court—Mr. Cosgrove's age, his deteriorating health, his specific medical conditions that make him more vulnerable to COVID-19, and his confinement at a BOP facility that has reported multiple COVID-positive tests—together warrant compassionate release under 18 U.S.C. § 3582(c)(1).

## IV.    CONCLUSION

For the foregoing reasons, Mr. Cosgrove's Motion for Reconsideration, Dkt. #91, is GRANTED.

IT IS THEREFORE ORDERED that Mr. Cosgrove's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), Dkt. #71, is GRANTED, and the term of imprisonment imposed is hereby reduced to the time the defendant has already served. He shall be released from the custody of the Bureau of Prisons immediately, but no later than 24 hours of the entry of this Order.

IT IS FURTHER ORDERED that upon release, the defendant shall begin serving the three-year term of supervised release previously imposed by the Court. He shall contact the United States Probation Office in Seattle and/or California within 24 hours of his release and follow its instructions.

IT IS SO ORDERED.

Dated this 15th day of April, 2020

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE